UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **INDIAN EDUCATORS FEDERATION**<br>**Local 4524 of the American Federation of**<br>**Teachers, AFL-CIO,**<br><br>        **Plaintiff,**<br><br>    v.<br><br>**DIRK KEMPTHORNE,**<br>**Secretary, United States Department**<br>**of the Interior,**<br><br>        **Defendant.** | **Civil No. 04-01215 (TFH)** |

## <u>MEMORANDUM OPINION</u>

Pending before the Court is the Motion For Summary Judgment [Docket No. 12] filed by the plaintiff, Indian Educators Federation, as well as a Motion To Dismiss Or, In The Alternative, For Summary Judgment [Docket No. 15] that was filed by the defendant, Secretary of the Interior Dirk Kempthorne. At issue in this case is the scope of Section 12 of the Indian Reorganization Act of 1934, 25 U.S.C. § 472 (1976), and whether the Act mandates employment preferences for American Indians employed in any position in the Interior Department that directly and primarily relates to the provision of services to American Indians. For the following reasons, the Court will grant in part the plaintiff's Motion for Summary Judgment and deny the defendant's Motion To Dismiss Or, In The Alternative, For Summary Judgment.

## I. BACKGROUND

This civil lawsuit was commenced by the Indian Educators Federation ("IEF"), which

describes itself as "a professional association, labor union and civil rights organization [that]

represents employees of the Office of Special Trustee and the Bureau of Indian Affairs."  Mem.

of P&A In Supp. Of Pl.'s Mot. For Summ. J. 1 (hereinafter "Pl.'s Mot. For Summ. J.").  IEF is

suing Dirk Kempthorne in his official capacity as Secretary of the United States Department of

the Interior (the "Interior Department") on the grounds that IEF is entitled to a declaratory

judgment that (1) the agency must give preference to qualified American Indians when filling all

employment vacancies involving positions that directly and primarily relate to the provision of

services to American Indians and (2) the agency's implementation of a rule that was proposed on

July 12, 1996 violates the rule-making provisions of the Administrative Procedures Act.  Pl.'s

Second Amended Compl. For Decl. & Injunctive Relief 14 ¶¶ a-b; Pl.'s Mot. For Summ. J. 45.

IEF also seeks an injunction against the Secretary to prohibit the agency from "failing to provide

qualified Indians with preference when filling all vacant positions within the Office of Special

Trustee for American Indians and the Office of the Assistant Secretary for Indian Affairs and all

other positions in the Department [that] directly or primarily relate to the providing of services."

Pl.'s Second Amended Compl. For Decl. & Injunctive Relief 14 ¶ c; Pl.'s Mot. For Summ. J. 45.

IEF's claim is premised on a statute Congress enacted in 1934 called the Indian

Reorganization Act, which is codified at 25 U.S.C. §§ 461 et seq.  The purpose of this statute

"was to establish machinery whereby Indian tribes would be able to assume a greater degree of

self-government, both politically and economically."  *Morton v. Mancari*, 417 U.S. 535, 542

-2-

(1974).  Section 12 of the Indian Reorganization Act, referred to colloquially as the "Indian preference,"[1] directs the Secretary of the Interior to:

> [E]stablish standards of health, age, character, experience, knowledge, and ability for Indians who may be appointed, without regard to civil-service laws, to the various positions maintained, now or hereafter, by the *Indian Office*, in the administration of functions or services affecting any Indian tribe.  Such qualified Indians shall hereafter have the preference to appointment to vacancies in any such positions.

25 U.S.C. § 472 (2000) (emphasis added).  The dispute in this case is focused on the meaning of the term "Indian Office" in the quoted section of the Act.  IEF contends that the term "Indian Office" should be interpreted to mean any position at the Interior Department that "directly and primarily relate[s] to the providing of services to Indians."  Pl's Mem. Supp. Summ. J. 7-14, 32-35.  The Interior Department, however, disagrees that the term should be construed so broadly.  Instead, the Interior Department asserts that it correctly "construes the term 'Indian Office' to mean a specific office – the Bureau of Indian Affairs – and applies the preference to jobs in the BIA, and to positions in organizational subparts of the BIA that have moved intact to other parts of the Interior Department."  Def.'s Mot. To Dismiss Or In The Alternative For Summ. J. 13-14 (hereinafter "Def.'s Mot.").

   To place the parties' dispute in context requires an account of the Interior Department's historical interpretation of Section 12.  It appears that at least prior to September 20, 1977, the

---

   [1]      *See Mancari*, 417 U.S. at 537 (discussing the "Indian preference"); *Albuquerque Indian Rights v. Lujan*, 930 F.2d 49, 50 (D.C. Cir. 1991) (same).  Section 12 of the Act also is referred to as the "Indian Preference Act" by several federal courts.  *See Dionne v. Shalala*, 209 F.3d 705, 707 (8th Cir. 2000); *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 899 (9th Cir. 1995); *Mescalero Apache Tribe v. Rhoades*, 755 F. Supp. 1484, 1486 (D. N.M. 1990); *Bobb v. Andrus*, 430 F. Supp. 522, 523 (D.D.C. 1977).

Interior Department interpreted Section 12's Indian preference to apply to positions in the Bureau of Indian Affairs and positions transferred from the Bureau to other offices within the Interior Department, as evidenced by a September 20, 1977 letter from Deputy Comptroller General R. F. Keller to the Chair of a House of Representatives Subcommittee on Compensation and Employee Benefits, which stated that "the Department of the Interior treats the Indian preference as incident to particular functions and considers that the preference continues to apply when such a function is transferred from the jurisdiction of the Bureau of Indian Affairs (BIA) to another office within the Department of the Interior." Pl.'s Mot. For Summ. J. Appendix A-1 (Letter from Keller to Chair of 9/20/77). In that letter, the Deputy Comptroller General considered whether the Interior Department was correctly applying Section 12's Indian preference to positions transferred from the Bureau of Indian Affairs to other offices in the Department and noted that the Interior Department was properly relying on a Civil Service Commission regulation that applied the preference to "other positions in the Department of the Interior directly and primarily related to providing services to Indians when filled by the appointment of Indians." *Id.* at A-2 ("Thus, the Department of the Interior's construction of the Indian preference as applicable to BIA and to positions within the Department other than those within the BIA is consistent with applicable CSC regulations."). The Deputy Comptroller General then went on to consider whether the Civil Service Commission regulation properly interpreted the term "Indian Office" and ultimately concluded that:

> The broader construction of the Indian preference as applicable to all positions within the Department of the Interior "directly and primarily related to the providing of services to Indians" adopted by the Civil Service Commission more fully gives effect to the purpose of the Indian preference than does a construction which would limit

-4-

its application to positions within the Bureau of Indian Affairs.

*Id.* at A-10 (quoting 5 C.F.R. § 213.3112(a)(7)).  Again, though, the issue presented to the Comptroller General was limited to whether the Interior Department was correctly applying the Indian preference to positions transferred from the Bureau of Indian Affairs to other offices in the Department.

Two years later, Interior Department Solicitor Leo Krulitz was confronted with the broader question of whether Section 12's Indian preference applied to positions in two new offices that were never part of the Bureau of Indian Affairs, namely the Office of Policy, Planning and Evaluation and the Office of Administrative Oversight, both of which reported to the Assistant Secretary of Indian Affairs.  *Id.* at A-12 (Mem. from Krulitz to Secretary of 6/13/79).  In his memorandum to the Secretary of the Interior Department, Solicitor Krulitz adopted the Comptroller General's previous analysis and stated that "[i]t is my opinion that [the Comptroller General's] interpretation is consistent with the purpose for which § 12 was enacted, and that applying preference within the Department outside BIA to positions directly and primarily related to the providing of services to Indians is legally justifiable."  *Id.* at A-13. Solicitor Krulitz further stated, however, that he thought the Civil Service Commission regulation's application of the Indian preference to positions "directly and primarily related to the providing of services to Indians" was too stringent.  *Id.*  After acknowledging "the ambiguity in § 12 created by the use of the term 'Indian Office[,]'" Solicitor Krulitz resorted to the legislative history of the statute to determine Congress' intent.  *Id.* at A14-15.  Although initially suggesting that the standard was more limiting than he preferred, he nevertheless determined that the

statute's legislative history supported the conclusion that "the purpose of § 12 would be served"
by "having employment preference apply to whatever positions within the Interior which directly
and primarily relate to Indians." *Id.* at A-14 & 15.  He also rejected the notion that positions in
the Interior Department could be exempt from the Indian preference if the positions were not
funded by the Bureau of Indian Affairs. *Id.* at A-16.

Nearly seven years later, Acting Associate Solicitor Timothy Elliott once again addressed
questions about the application of Section 12's Indian preference in a memorandum to the
Director of the Office of Information Resources Management at the Interior Department. *Id.* at
A-21 (Mem. from Elliott to Director of 5/6/86).  At that time, Acting Associate Solicitor Elliott
responded to a request for advice about "how Indian preference and the Buy Indian Act may
impact upon the Department's plan to consolidate many administrative services across bureau
lines." *Id.*  Acting Associate Solicitor Elliott discussed Solicitor Krulitz's 1979 opinion adopting
the Comptroller General's 1977 opinion and observed that, shortly after Solicitor Krulitz's
opinion was issued, Congress enacted a statute providing reduction-in-force procedures and
retirement provisions for employees and defined the "Bureau of Indian Affairs" to include "'all
other organizational units in the Department of the Interior directly and primarily related to
providing services to Indians and in which positions are filled in accordance with the Indian
preference laws.'" *Id.* at A-22 (quoting P.L. 96-135 (Dec.5, 1979), codified in part at 25 U.S.C.
§ 472a).  Acting Associate Solicitor Elliott indicated his assessment that "by using language
similar to that used by the Comptroller General in its 1977 opinion Congress was implicitly
recognizing the validity of the Comptroller General's approach to the question of which positions

were covered by the Indian preference law, 25 U.S.C. § 472." *Id.* He then stated that he was

"persuaded that [Solicitor Krulitz's] 1979 opinion . . . correctly describes the impact of the Indian

preference law on positions outside the Bureau of Indian Affairs" and explained that:

> [W]hen considering whether the Department should apply Indian preference to
> positions in a consolidated service delivery operation, the primary issue will be the
> extent to which the positions are involved in the delivery of services to Indians. The
> more departmental-wide the duties of a position are, the less likely the Indian
> preference would apply to that position. Whether Indian preference applies will have
> to be determined on a case by case basis, considering all facts and circumstances
> presented.

*Id.* at A-22-23.

After more than ten years interpreting Section 12's Indian preference to apply to Interior

Department positions directly and primarily involved in providing services to American Indians,

Solicitor Ralph Tarr reversed course and stated that "[t]o the extent that the Solicitor previously

hypothesized that Indian preference could apply outside the BIA, we have concluded that his

opinion is inconsistent with the relevant statutory texts and with the Supreme Court's analysis."

*Id.* at A-35 (Mem. from Tarr to Secretary of 6/10/88). According to Solicitor Tarr, "the Indian

preference applies only within the Bureau of Indian Affairs." *Id.* at A-27. Not surprisingly, the

plaintiffs take issue with this opinion.

This is not the first time Solicitor Tarr's opinion has been challenged. In *Albuquerque*

*Indian Rights v. Lujan*, 930 F.2d 49 (D.C. Cir. 1991), an organization comprised of American

Indians called Albuquerque Indian Rights Association ("AIRA") sued the Secretary of the

Interior on the ground that the agency violated Section 12 of the Indian Reorganization Act "by

failing to extend the Indian preference to positions within [the Office of Construction

-7-

Management]." 930 F.2d at 50-51. The Office of Construction Management was established outside the Bureau of Indian Affairs but was congressionally mandated to reorganize the Bureau's facilities management program, which resulted in the Office of Construction Management directly supervising employees that formerly were supervised by the applicable Bureau office. *Id.* at 51-52. The Interior Department relied on Solicitor Tarr's opinion to support its contention that the Indian preference did not apply to positions in the Office of Construction Management because the term "Indian Office" in Section 12 was interpreted to "mean only those offices within the BIA itself, or those removed intact from the BIA." *Id.* At 52.

Notwithstanding its determination that the plaintiff lacked standing to pursue the lawsuit, the D.C. Circuit nonetheless offered at length its observations about the merits of the plaintiff's claim.[2] The D.C. Circuit characterized Solicitor Tarr's opinion as a "dramatic break with past interpretations of the preference provision" and expressed its skepticism about the Interior Department's likely success at defending its current application of the Indian preference absent a more developed administrative record. *Id.* at 58. Indeed, the D.C. Circuit advised the agency that its "interpretation may compel it to confront the long-standing canon that 'statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." *Id.* As the D.C. Circuit forewarned:

> [I]n the area of American Indian law, the Department may wish to consider that the liberality rule applied in *Blackfeet Indians* and other cases involving native Americans derives from principles of equitable obligations and normative rules of

---

[2]     In his concurrence, Judge Ginsburg "decline[d] to express any view upon the merits of an issue that the plaintiff has no right to raise and the court, accordingly, no reason to resolve." *Albuquerque Indian Rights*, 930 F.2d at 63.

> behavior, rather than from ordinary statutory exegesis. It is true that at least one of
> our sister circuits has treated this rule of liberal construction in favor of Indians as it
> would treat other canons, deferring to the 'agency charged with [the statute's]
> administration.' However, it is also true that we have not. In *Muscogee (Creek)
> Nation v. Hodel*, 851 F.2d 1439 (D.C.Cir.1988), *cert. denied*, 488 U.S. 1010 (1989),
> in which we construed an arguably ambiguous statute concerning the power of an
> Indian tribe to maintain its own tribal courts, we noted that "'[t]he canons of
> construction applicable in Indian law are rooted in the unique trust relationship
> between the United States and the Indians,'" and ruled that "'[s]tatutes are to be
> construed liberally in favor of the Indians, with ambiguous provisions interpreted to
> their benefit.'" Based on the special strength of this canon, we then declined to defer
> to DOI's interpretation of the governing statute, which had not followed the canon.

*Id.* at 59 (internal citations omitted). The D.C. Circuit therefore recommended that "the

Department might give serious consideration to re-examining its interpretation in a forum

providing more due process, allowing more opportunity for input from interested parties, and

creating a more reviewable record, rather than simply adopting an *ex parte* memorandum

followed by the posting of an employment notice." *Id.*

Five years later, the Interior Department heeded the D.C. Circuit's advice by issuing a

notice of proposed rule "to amend the Preference in Employment regulations by clarifying the

application of Indian preference not only within BIA but to other organizations within the

Department of the Interior . . . ." 61 FED. REG. 36671. The proposed rule would have amended

the Code of Federal Regulations to state as follows:

> Sec. 5.2  Do certain individuals receive preference in employment?
>
> > Yes. Certain persons who are of Indian descent, as described in Sec. 5.3,
> > receive preference when appointments are made to vacancies in positions:
> >
> > (a)    In the Bureau of Indian Affairs; and
> >
> > (b)    In any unit that has been transferred intact from the Bureau of
> > Indian Affairs to a Bureau or Office within the Department of the

> Interior and that continues to perform the functions formerly
> performed as part of the Bureau of Indian Affairs.

*Id.* The notice was published on July 12, 1996 and stated that comments were due by September 10, 1996. To date, no final rule has been published.

For the purpose of resolving the parties' motions, it is uncontested that the plaintiff's American Indian members applied for and were deemed qualified for promotions to higher graded positions within the Office of Special Trustee for American Indians ("OST") and the Office of Assistant Secretary of Indian Affairs ("AS-IA") but non-Indian applicants were selected for the positions. Pl.'s Statement Of Mat. Facts To Which There Is No Genuine Dispute ¶¶ 8-9 (hereinafter Pl.'s Undisputed Facts"); Def.'s Resp. To Pl.'s Statement Of Mat. Facts To Which There Is No Genuine Dispute ¶¶ 8-9 (hereinafter Def.'s Resp. To Pl.'s Undisputed Facts"). It also is uncontested that the plaintiff's members would have been selected for promotions to the positions if the Secretary of Interior applied the Indian preference because the non-Indian applicants would not have been considered. Pl.'s Undisputed Facts ¶ 10; Def.'s Resp. To Pl.'s Undisputed Facts ¶ 10.

## II. DISCUSSION

Both parties moved for summary judgment.[3] The standard of review for summary

---

[3]     The defendant also moved to dismiss the plaintiff's Complaint but failed to demonstrate that the plaintiff's factual allegations neglected to "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007). Moreover, the defendant relied extensively on documents detailing the legislative and regulatory history of the Indian Reorganization Act to support its arguments. Accordingly, the Court properly treated the motion as one for summary judgment. *Marshall County Health Care Auth. v. Shalala*, 988

judgment motions is well established and its parameters have been succinctly outlined by the

D.C. Circuit as follows:

> Summary judgment is appropriate only if there is no genuine issue as to any material
> fact and . . . the moving party is entitled to judgment as a matter of law.  A dispute
> about a material fact is genuine if the evidence is such that a reasonable jury could
> return a verdict for the nonmoving party, . . . a moving party is entitled to judgment
> as a matter of law only if the nonmoving party fails to make a showing sufficient to
> establish the existence of an essential element to that party's case, and on which that
> party will bear the burden of proof at trial . . . .  We must view the evidence in the
> light most favorable to the nonmoving party . . . draw all reasonable inferences in her
> favor, and eschew making credibility determinations or weighing the evidence.

*Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007) (internal quotation marks and citations

omitted).

## A.   THE SCOPE OF SECTION 12 OF THE INDIAN REORGANIZATION ACT

As a preliminary matter, in light of the D.C. Circuit's decision in *Albuquerque Indian*

*Rights*, it is a foregone conclusion whether the term "Indian Office" is ambiguous in Section 12

of the Indian Reorganization Act.  In *Albuquerque Indian Rights* the D.C. Circuit observed that

"[t]he term 'Indian Office' is nowhere defined in the statute, nor is it the official name of any

known agency within or without the Department of the Interior."  930 F.2d at 51.  Typically,

when a statute contains an ambiguous term, standard principles of statutory interpretation dictate

that the Court defer to an agency's permissible construction of the statute pursuant to the

Supreme Court's holding in *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S.

837 (1984).  *Phillips Petroleum Co. v. F.E.R.C.*, 792 F.2d 1165, 1169 (D.C. Cir. 1986) ("Under

---

F.2d 1221, 1226 (D.C. Cir. 1993) ("when a district court is not sitting as an appellate court and
the district judge looks outside the complaint to factual matters, he or she must convert a motion
to dismiss into a motion for summary judgment . . . .").

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, if Congress has not spoken

clearly on the precise question at issue, a reviewing court must determine if the agency's

interpretation of the statute 'represents a reasonable accommodation of conflicting policies that

were committed to the agency's care by the statute.'"). In this case, the Interior Department has

proffered an interpretation of the term "Indian Office" that is premised on Solicitor Tarr's 1988

legal opinion and the Department's post hoc interpretation of legislative history.

What is unique about this case, though, is that it involves American Indian law. "[T]he

standard principles of statutory construction do not have their usual force in cases involving

Indian law." *Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985). When construing

statutes that address Indian law, the courts in this Circuit recognize that the *Chevron* principle of

deference to administrative interpretations is subjugated by the "long-standing canon that

'statutes are to be construed liberally in favor of the Indians, with ambiguous provisions

interpreted to their benefit.'" *Albuquerque Indian Rights*, 930 F.2d at 58 (quoting *Blackfeet

Tribe of Indians*, 471 U.S. at 766); *see also Muscogee (Creek) Nation v. Hodel*, 851 F.2d 1439,

1441 (D.C. Cir. 1988). To be sure, the D.C. Circuit has noted that this canon has "special

strength." *Albuquerque Indian Rights*, 930 F.2d at 59. This canon owes its strength in part to the

"distinctive obligation of trust incumbent upon the Government in its dealings with these

dependent and sometimes exploited people." *Seminole Nation v. United States*, 316 U.S. 286,

296 (1942). Thus, "[t]he Supreme Court has recognized that this 'overriding duty' requires that

where the Department of the Interior (specifically the BIA) has traditionally expressed one

position to Congress and the Indian tribes, 'it is essential that the legitimate expectations of . . .

-12-

Indians not be extinguished by what amounts to an unpublished *ad hoc* determination."
*Albuquerque Indian Rights*, 930 F.2d at 58.

With these principles in mind, the Court is compelled to conclude that the term "Indian Office" in Section 12 of the Indian Reorganization Act must be construed to mean positions in the Department of the Interior, whether within or without the Bureau of Indian Affairs, that directly and primarily relate to providing services to Indians when filled by the appointment of Indians.  This construction is consistent with the Interior Department's prior legal determinations and the legitimate expectations of Indians.[4]  As the D.C. Circuit acknowledged in *Albuquerque Indian Rights*, the Interior Department "has traditionally interpreted the term 'Indian Office' broadly to include all units within DOI 'directly and primarily related to the providing of services to Indians,' not limiting application of the preference solely to positions within the BIA." 930 F.2d at 51 (citing the legal opinions by Solicitor Krulitz, Acting Associate Solicitor Elliott, and Deputy Comptroller General Keller).  Notably, the D.C. Circuit emphasized that the position taken by Solicitor Tarr in his 1988 legal opinion "reversed [the Interior Department's] earlier statutory interpretation," *id.*, and "represents a dramatic break with past interpretations of the preference provision," *id.* at 58.[5]  Simply put, prior to Solicitor Tarr's 1988 opinion, American

---

[4]      If the Interior Department's prior interpretation of the Indian preference failed to reflect Congress' actual intent in enacting Section 12 of the Indian Reorganization Act, there is no reason Congress could not have legislatively clarified its intent during the proceeding years leading up to Solicitor Tarr's opinion.

[5]      The Court is cognizant of the fact that "[a]n agency's interpretation of a statute is entitled to no less deference . . . simply because it has changed over time." *Nat'l Home Equity Mortg. Ass'n v. Office of Thrift Supervision*, 373 F.3d 1355, 1360 (D.C. Cir. 2004).  The catch, though, is that "an agency must provide a 'reasoned analysis' for its change in course." *Id.* "A statutory interpretation . . . that results from an unexplained departure from prior [agency] policy

Indians legitimately expected that the Indian preference would be applied to all positions in the

Interior Department that directly and primarily relate to providing services to Indians and an

interpretation of the term "Indian Office" that reaffirms that expectation comports with the canon

that statutes are to be construed "liberally" in favor of the Indians, with ambiguous provisions

interpreted to their benefit.[6]

---

and practice is not a reasonable one." *Northpoint Tech., Ltd. v. FCC*, 412 F.3d 145, 156 (2005). The Court notes that the Interior Department's analysis for its present change in course is based on a legal opinion and interpretation of the legislative history that was in existence at the time the D.C. Circuit considered the issue in *Albuquerque Indian Rights*. Although admittedly expressed in dicta, the D.C. Circuit clearly indicated its doubt about whether the Interior Department could "successfully defend its new interpretation" and suggested that "in order to prepare for doing so . . . the Department might give serious consideration to re-examining its interpretation in a forum providing more due process, allowing more opportunity for input from interested parties, and creating a more reviewable record, rather than simply adopting an *ex parte* memorandum followed by the posting of an employment notice." 930 F.2d at 59. Remarkably, the Interior Department attempted to re-examine its interpretation in a forum providing due process by publishing for comment a proposed rule stating that the Indian preference would apply only to positions within the Bureau of Indian Affairs and those that were transferred intact to another office in the agency – but the agency never followed through with this process. Consequently, the agency has, in essence, simply adopted Solicitor Tarr's 1988 *ex parte* memorandum and then posted employment notices, which is exactly what the D.C. Circuit forewarned against. Having elected not to follow through with the published rulemaking process, and there being no new events to otherwise explain the departure from prior interpretations of the term "Indian Office," the Court is persuaded that the agency has failed to demonstrate a "reasoned" analysis for its change in course.

[6]     The defendant advanced the argument that this construction of the statute "would indeed implicate significant constitutional concerns." Def.'s Mot. 23. To support this theory the defendant cites to the Supreme Court's decision in *Morton v. Mancari*, 417 U.S. 535 (1974), in which the Supreme Court considered whether Section 12's Indian preference was unconstitutionally racially discriminatory. The Supreme Court held that it was not because the Indian preference was "reasonable and rationally designed to further Indian self-government . . . ." 417 U.S. at 555. The defendant argues that the Supreme Court's decision "relied heavily on its perception that the preference law applies only to the BIA." Def.'s Mot. 23-24. The Court disagrees. The Supreme Court's decision was based on its recognition that "proper fulfillment of [Congress'] trust required turning over to the Indians a greater control of their own destinies." *Mancari*, 417 U.S. at 553. Because the preference was "directed to

-14-

**B.      WHETHER THE INTERIOR DEPARTMENT VIOLATED THE
         ADMINISTRATIVE PROCEDURE ACT'S  RULEMAKING PROVISIONS**

In addition to challenging the Interior Department's interpretation of Section 12 of the

Indian Reorganization Act, the plaintiff also argues that the Department violated the

Administrative Procedure Act's rulemaking provisions by implementing a proposed rule without

first considering received comments and publishing a final version of the rule.  Pl.'s Mot. For

Summ. J. 43.  Because the Court holds unlawful an interpretation of Section 12 that fails to apply

the Indian preference to all positions in the agency the directly and primarily relate to providing

services to Indians, it need not address this alternative argument at this time.

**C.      PROPRIETY OF DECLARATORY RELIEF**

The Declaratory Judgment Act "confer[s] on federal courts unique and substantial

discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515

U.S. 277, 286 (1995).  "[T]he propriety of declaratory relief in a particular case will depend upon

a circumspect sense of its fitness informed by the teachings and experience concerning the

functions and extent of federal judicial power." *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344

U.S. 237, 243 (1952).  The Act itself provides that "[i]n a case of actual controversy within its

---

participation by the governed in the governing agency[,]" it was reasonably related to a legitimate
and non-racially-based goal.  Without question, the Bureau of Indian Affairs is the primary entity
involved in Indian governance; however, this Court views the Supreme Court's decision in
*Mancari* as broader than the defendant supposes.  So long as the Indian preference is applied to
ensure greater participation by Indians in positions that increase self-governance, the application
of the Indian preference will not run afoul of constitutional norms.  It strikes the Court that
positions outside the BIA that directly and primarily relate to providing services to Indians are
properly the subject of the Indian preference, assuming they promote Indian self-governance,
whereas "a blanket exemption for Indians from all civil service examinations" would be
problematic, as the Supreme Court indicated.  *Id.* at 554.

-15-

jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 220. To qualify for declaratory relief, the controversy "must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 241 (1937). Thus, "[w]here there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages." *Id.*

The Court finds that declaratory relief is appropriate in this case. The controversy over the scope of Section 12 of the Indian Reorganization Act is a concrete dispute and a declaration that Section 12 applies to all positions in the Interior Department that directly and primarily relate to the provision of services to Indians will admit of an immediate and definitive determination of the legal rights of the parties and affords appropriate relief to remedy the plaintiff's claims. Accordingly, the Court will grant the plaintiff's request for a declaration that the Interior Department's failure to apply Section 12's Indian preference to all positions in the Department that directly and primarily relate to providing services to Indians is unlawful.

**D.     PROPRIETY OF INJUNCTIVE RELIEF**

The Court has discretion to issue an injunction if it determines that a balance of the equities and hardships on both sides favors granting such relief. *Cobell v. Kempthorne*, 455 F.3d

301, 315 (D.C. Cir. 2006).  Neither party addressed the propriety of injunctive relief in their

briefs, so the Court will defer ruling on this remedy to allow the parties the opportunity to present

their positions regarding whether injunctive relief is appropriate under the circumstances.

### III.  CONCLUSION

For the reasons set forth above, the Court will grant in part the plaintiff's Motion for

Summary Judgment and deny the defendant's Motion To Dismiss Or, In The Alternative, For

Summary Judgment.  An appropriate Order will accompany this Memorandum Opinion.

March 31, 2008

Thomas F. Hogan
Chief Judge