**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**INDIAN EDUCATORS FEDERATION**
**Local 4524 of the American Federation of**
**Teachers, AFL-CIO,**

      **Plaintiff,**

  **v.**                                **Civil Action No. 04-01215 (TFH)**

**DIRK KEMPTHORNE,**
**Secretary, United States Department**
**of the Interior,**

      **Defendant.**

---

**MEMORANDUM OPINION**

      Pending before the Court is a Motion For Entry Of Final Judgment [Docket No. 28] that was filed by the defendant, Secretary of the Interior Dirk Kempthorne, and a Motion For A Permanent Injunction [Docket No. 29] that was filed by the plaintiff, Indian Educators Federation ("IEF"). For the reasons that follow, the Court will grant the Secretary's motion and deny IEF's motion.

**BACKGROUND**

      On July 19, 2004, IEF filed a Complaint that challenged the Secretary of the Interior's interpretation of Section 12 of the Indian Reorganization Act of 1934, 25 U.S.C. § 472 (1976). IEF claimed that the Secretary was unlawfully failing to apply Section 12 – which mandates employment preferences for American Indians (commonly referred to as the "Indian preference")

– to positions outside the Bureau of Indian Affairs, particularly positions in the Office of Special

Trustee for American Indians ("OST") and the Office of the Assistant Secretary – Indian Affairs

("AS-IA").[1]  More specifically, the parties disputed whether the term "Indian Office" in Section

12 should be interpreted to refer exclusively to the Bureau of Indian Affairs or whether it should

be interpreted, in the context of Section 12 and prior agency interpretation, to mean all positions

in the Interior Department that directly and primarily relate to the provision of services to

American Indians.  On March 31, 2008, the Court issued a Memorandum Opinion granting the

plaintiff's Motion For Summary Judgment and holding that "the term 'Indian Office' in Section

12 of the Indian Reorganization Act must be construed to mean positions in the Department of

the Interior, whether within or without the Bureau of Indian Affairs, that directly and primarily

---

[1]      As discussed in the Court's March 31, 2008, Memorandum Opinion, Section 12 of the
Indian Reorganization Act directs the Secretary of the Interior to:

> [E]stablish standards of health, age, character, experience, knowledge, and
> ability for Indians who may be appointed, without regard to civil-service laws,
> to the various positions maintained, now or hereafter, by the *Indian Office*, in
> the administration of functions or services affecting any Indian tribe.  Such
> qualified Indians shall hereafter have the preference to appointment to
> vacancies in any such positions.

25 U.S.C. § 472 (2000) (emphasis added).  The initial dispute in this case was focused on the
meaning of the term "Indian Office" in the quoted section of the Act.  IEF contended that the
term "Indian Office" should be interpreted to mean any position at the Interior Department that
"directly and primarily relate[s] to the providing of services to Indians."  Pl's Mem. Supp.
Summ. J. 7-14, 32-35.  The Secretary, however, disagreed that the term should be construed so
broadly.  Instead, the Secretary asserted that it correctly "construes the term 'Indian Office' to
mean a specific office – the Bureau of Indian Affairs – and applies the preference to jobs in the
BIA, and to positions in organizational subparts of the BIA that have moved intact to other parts
of the Interior Department."  Def.'s Mot. To Dismiss Or In The Alternative For Summ. J. 13-14.

relate to providing services to Indians when filled by the appointment of Indians."[2]  Mem. Op. 13.  Accordingly, the Court determined that declaratory relief was appropriate and "the Interior Department's failure to apply Section 12's Indian preference to all positions in the Department that directly and primarily relate to providing services to Indians [was] unlawful."  *Id.* at 16.  The Court reserved judgment about whether IEF's request for a permanent injunction was warranted pending an opportunity for the parties to brief and argue the issue.

The parties have now fully briefed and argued their respective positions.  IEF contends that a permanent injunction requiring the Secretary to apply the Indian preference to all positions in OST and AS-IA is necessary to ensure that the Secretary complies with the declaratory judgment with respect to positions in those offices and to ensure that its members have a remedy for future violations.  The government opposes granting injunctive relief and requests that the Court simply enter a final declaratory judgment that "require[s] application of the preference to jobs in AS-IA and OST that meet the test articulated by the Court."   Def.'s Mem. Supp. Mot. for Entry of Final J. 2.

## ANALYSIS

"Any injunctive relief is considered 'an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of

---

[2]      Accordingly, the Court held that the Secretary's failure to apply the Indian preference to all positions in the Interior Department that directly and primarily relate to providing services to American Indians was unlawful.  It therefore follows that, pursuant to Section 706 of the Administrative Procedures Act, the Secretary's interpretation of Section 12 must be set aside as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2)(A).

persuasion.'" *Harris County, Tex. v. CarMax Auto Superstores*, 177 F.3d 306, 312 (5th Cir. 1999) (quoting *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989)).  The standard to determine whether a permanent injunction is warranted has been articulated by the Supreme Court as follows:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief.  A plaintiff must demonstrate (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (internal citations omitted). Although the decision to grant injunctive relief is discretionary, the Court recognizes that in *Cobell v. Norton*, 391 F.3d 251, 259 (D.C. Cir. 2004), the United States Court of Appeals for the District of Columbia Circuit implied that a district court has greater latitude to fashion an equitable remedy when the underlying lawsuit involves Indians, as is the case here.  391 F.3d at 257-58 (stating that "[t]he district court . . . retains substantial latitude, much more so than in the typical agency case, to fashion an equitable remedy because the underlying lawsuit is both an Indian case and a trust case in which the trustees have egregiously breached their fiduciary duties").  Nevertheless, if a permanent injunction is warranted, it "should be tailored to restrain no more than what is reasonably required to accomplish its ends."  *Consolidation Coal Co. v. Disabled Miners of S. W. Va.*, 442 F.2d 1261, 1267 (4th Cir. 1971).

As a preliminary matter, the parties' briefs reveal a dispute about the scope of the Court's holding that the Indian preference applies to all positions in the Interior Department that directly and primarily relate to the provision of services to Indians.   IEF asserts that the Interior Department Secretary "is required to apply Indian Preference to 'organizational units' involved in the administration of Indian affairs, not just to 'positions' [that] primarily and directly provide services to Indians." Pl.'s Mem. Supp. Mot. for Permanent Inj. 2.   Accordingly, so IEF argues, an injunction is necessary because the Secretary "is attempting to skirt this requirement." *Id.* IEF reaches this result by relying on an amendment to Section 12 of the Indian Reorganization Act that granted Indians a preference in the event of reductions-in-force. *Id.* at 3.  As indicated in the plain language of the federal statute that establishes the Indian preference, however, the preference applies to "positions" and not to "organizational units." 25 U.S.C. § 472 (stating that the Indian preference shall apply to "positions").  The Court's holding that the preference applies to "positions" that directly and primarily relate to the provision of services to Indians comports with the express statutory language and will not be reconsidered by the Court at this stage of the case, notwithstanding IEF's attempt to expand the scope of the Court's holding while arguing in favor of injunctive relief.

As far as the balancing of the equities and hardships is concerned, IEF argues that its members will suffer irreparable injury because the Indian Preference Act does not provide a cause of action for individual relief in the form of monetary damages if a member is declined selection for a position to which the Indian preference applies. Pl.'s Mem. Supp. Mot. for Permanent Inj. 8.  At the same time, though, IEF concedes that a permanent injunction also

would not provide a cause of action for individual relief, whether in the form of a contempt proceeding or otherwise, given that "only those non-parties who are specifically named in an injunction are entitled to seek enforcement of such orders through contempt proceedings under Fed. R. Civil Proc. 7." Pl.'s Mem. Supp. Mot. for Permanent Inj. 10.  This calls into question the necessity of a permanent injunction in this case, although it appears that IEF plans to enforce such an order on behalf of its collective members.  Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for Permanent Inj. 3-4 (stating that "while the injunction would not be enforceable by individual employees, it would be enforceable in contempt proceedings by the plaintiff Indian Educators Federation").

The Secretary counters that the remedy of a declaratory judgment is adequate relief for IEF and cites *Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992), for his position that, "[a]s the Supreme Court has made clear, absent evidence to the contrary, a court should assume that government officials are likely to conform their conduct to an authoritative construction of a statute contained in a declaratory judgment even though not coupled with a coercive injunctive order."[3]  Def.'s Mem. Supp. Mot. for Entry of Final J. 5.  In response to this argument, IEF

---

[3]        In *Franklin*, the Supreme Court considered a district court order enjoining census methods that counted overseas military personnel to the state designated in their personnel files as their "home of record" for the purpose of reapportioning congressional seats.  After concluding that the decision to allocate military personnel to their home of record was arbitrary and capricious, a three-judge panel ordered the Secretary of Commerce to eliminate overseas federal employees from the apportionment counts, directed the President to recalculate the number of Representatives per state and transmit the new calculations to Congress, and directed the Clerk of the House of Representatives to inform the states about the change.  While addressing the question of whether the injury was redressable by the requested injunctive relief, the Supreme Court observed that it need not decide whether the district court had jurisdiction to enjoin the President in the performance of his official duties "because we conclude that the injury alleged is likely to be redressed by declaratory relief against the Secretary alone."  505 U.S. at

asserts that the Secretary already signaled his intent to avoid applying the Indian preference to positions in OST and AS-IA so a permanent injunction is necessary to compel compliance.  Pl.'s Mem. Supp. Mot. 8.  At this juncture, IEF's claim that the Secretary intends to violate the declaratory judgment is speculative and premised on (1) legal positions the Secretary advanced before the Court decided the merits of the case and (2) IEF's theory that the Indian preference applies to "organizational units," which is a position the Court has not adopted.  There currently is no indication that the Secretary intends to violate the declaratory judgment in the future.  It certainly is possible, if not inevitable, that there will be legitimate disputes between the parties about whether specific positions "directly and primarily relate to providing services to Indians when filled by the appointment of Indians," but that is a reflection of Congress's failure to clarify Section 12 of the Indian Reorganization Act.  Such disputes would not, by default, reflect the Secretary's unwillingness to comply with the declaratory judgment, and it is unlikely that such disputes will be averted by granting injunctive relief in this case.

IEF neglects to address the balance of hardships in its legal briefs and arguments but does assert that "[a]n injunction will promote the public interest because it will ensure compliance with the Indian Reorganization Act and promote Indian self-governance and self-determination."

---

803.  The Supreme Court went on to state that:

> [A]s the Solicitor General has not contended to the contrary, we may assume it is substantially likely that the President and other executive and congressional officials would abide by an authoritative interpretation of the census statute and constitutional provision by the District Court, even though they would not be directly bound by such a determination.

*Id.*

Pl.'s Mem. Supp. Mot. 8.  Again, though, absent some indication that the Secretary intends to

violate the declaratory judgment, the plaintiffs have not convinced the Court that a declaratory

judgment alone is insufficient to protect the public interest.

　　　The Secretary argues that the balance of hardships counsels against granting injunctive

relief because it would be impossible to craft an injunction that is specific enough to comply with

Federal Rule of Civil Procedure 65(d), which mandates that every injunction "state its terms

specifically" and "describe in reasonable detail – and not by referring to the complaint or other

document – the act or acts restrained or required."  As the Secretary correctly observes, the

Supreme Court long ago held that an injunction that contains "an abstract conclusion of law, not

an operative command capable of 'enforcement,'" fails to meet the specificity requirements of

Rule 65.  Def.'s Mem. Supp. Mot. for Entry of Final J. at 6 (quoting *Int'l Longshoremen's Assn.

v. Philadelphia Marine Trade Assn.*, 389 U.S. 64, 74-76 (1967)).  The Secretary also argues that

an injunction would interfere with the agency's authority to reorganize its workforce as it sees fit.

*Id.* at 7.

　　　There is merit to the Secretary's concerns given that, at this time, the Court can offer no

more specificity about the positions to which the Indian preference applies than was announced

in its prior opinion addressing the request for a declaratory judgment.  This case or controversy

did not reach the ultimate question of whether *particular positions* – for example, all those in

AS-IA or OST – directly and primarily relate to providing services to Indians when filled by the

appointment of Indians.  As a result, injunctive relief at this stage likely will not effectuate the

result IEF seeks for its members and, frankly, is somewhat premature because the Court's

declaratory judgment  is one step removed from what clearly is the decisive issue as far as IEF is concerned.  The better approach, albeit optimistic, would be for the parties to focus their efforts and resources on reaching a consensus about the identity of the specific positions in AS-IA and OST, if not all of them, that directly and primarily relate to providing services to Indians when filled by the appointment of Indians.  At that point, if it is revealed that the Secretary unlawfully is failing to apply the Indian preference to specific positions that qualify for it, then IEF might have a stronger case for injunctive relief.

From this vantage point – and after carefully considering the relevant facts, the parties' arguments, and the interests at stake – the Court concludes that the balance of the equities and hardships, as defined by the four factors discussed above, counsel against granting injunctive relief at this time.[4]  It is the Court's view that a declaratory judgment is a sufficient remedy in light of all the facts and circumstances as they presently stand; however, if the Secretary fails to comply with the declaratory judgment, then IEF would be acting well within its rights to request that the Court revisit the question of whether an injunction is warranted to compel the Secretary's compliance.

---

[4]        Because the Court finds that the balance of the equities and hardships disfavor granting injunctive relief, it need not address the Secretary's alternate theory that an injunction is inappropriate because such a remedy would circumvent the Civil Service Reform Act.  *See* Def.'s Mem. Supp. Mot. for Entry of Final J. 8-9.

**CONCLUSION**

For the reasons set forth above, the Court will grant Secretary of the Interior Dirk Kempthorne's Motion For Entry Of Final Judgment and deny IEF's Motion For A Permanent Injunction.  An appropriate order and judgment accompany this Memorandum Opinion.

December 3, 2008                                        /s/ *Thomas F. Hogan*
                                                      Thomas F. Hogan
                                                      United States District Judge